WILLIAM PAINE, *et al.*, v. JOHN W. SPRATLEY.

*Error from Leavenworth County.*

| 5 | 525 |
|---|---|
| 51 | 68 |
| 5 | 525 |
| 63 | 848 |
| 5 | 525 |
| 68 | 309 |
| 5 | 525 |
| 82 | 771 |

1. RES JUSTICATA—Where proceedings have been had in any case before a court of general jurisdiction, and on the face of such proceedings it appears that jurisdiction had been acquired of the subject matter and of the person in such case, the decision and judgment of such court, notwithstanding errors may have intervened, cannot be collaterally attacked or examined, on account of such errors, in another court, or in another proceeding, but such decision and judgment must be regarded as binding until reversed.

2. ID: As TO SUPPLEMENTARY PROCEEDINGS.—The same rule applies to proceedings had under the direction of such a court, and by the proper officers thereof—after judgment—when such proceedings have been approved.

3. APPRAISEMENT OF LANDS.—Where the record fairly shows that there was a substantial compliance with the spirit of the law, requiring an appraisement of the property, taken upon execution, to be made, and in each successive step therein, and also that the rights of the parties in respect thereof, were carefully guarded. *Held:* That an appraisement so made is sufficient.

4. CORPORATIONS : MUNICIPAL POWERS OF.—The grant to a municipal corporation of the power to provide for the levy and collection of special taxes for the improvement of streets and alleys upon real estate adjacent to such improvement, does not include the power to provide for the sale and conveyance of such real estate in case of non-payment.

5. ID : ASSESSMENTS FOR IMPROVEMENTS —Nor will the power to provide for such sale be inferred from an express provision, to the effect that such taxes may be collected in manner as should be provided by ordinance. But in such case the corporation would have the right to provide for the enforcement of the collection of such special taxes, by proceedings in due course of law.*

---

*1. AMENDMENT OF EXECUTION.—Where an execution differs as to the amount of the debt, from the judgment, it seems, it may be corrected upon presentation to the court.

2. APPRAISEMENT: OATH.—A certificate of appraisement of real estate, stating that the appraisers were "duly sworn," is a sufficient showing that the proper oath was administered.

The principal sections of ordinance, number ninety, referred to, relative to the sale of adjacent lots for taxes, are as follows:

"SECTION 13.   On the day designated in the notice of sale, the city treasurer shall commence the sale of those lands on which the taxes, penalty and charges have not been paid, and shall continue the same from day to day (Sundays excepted) until so much of each parcel be sold as shall be sufficient to pay the taxes, penalty and charges thereon.

"SEC. 14.   The person, at such sales, offering to pay the taxes, penalties and charges on any tract or parcel of land, for the least quantity thereof, shall be the purchaser of such quantity, which shall, in all cases, be taken from the east side of said tract or parcel of land; but if there be no bid for less than the whole of said tract, piece or parcel of land, then the whole shall be sold.

"SEC. 15.   The city treasurer may, in his discretion, require immediate payment of every person to whom any parcel of such land shall be struck off, and in all cases, when payment is not made within twenty-four hours after

3.  MUNICIPAL CORPORATIONS.—Municipal corporations possess the powers granted to them in express terms, and those necessarily involved in the exercise thereof—doubts as to the possession of a power—will be thrown against such possession.

4.  LEAVENWORTH CITY: POWERS.—The authority of the city of Leavenworth, under Chapter 46, Comp. Laws, to enact ordinances for the levying of special taxes for street improvements, on adjacent real estate is given in Art. 2, § 1, Subd. 22 thereof.

5.  ID: TAXES AND ASSESSMENTS.—The provision in Art. 2, § 1, Sub. 2, of Chap. 46, Comp. L., authorizing the city "to provide for the sale of real estate for the non-payment of any taxes due thereon," applies, not to special assessments for street improvements, but to taxes for general and special purposes, mentioned in Subd. 1 thereof. The word taxes does not include assessments, and taxes differ in their nature and purpose therefrom.

6.  CONSTITUTIONAL AND STATUTE LAW: TAXES AND ASSESSMENT.—The powers of cities in levying taxes for revenue, and for assessments for improvements, are given as distinct and independent powers, in the constitution [Art. 12, § 5] and in the laws. [Chap. 46, Comp. L., § 1, Subs. 1 and 22.

7.  ID: LEGISLATIVE CONSTRUCTION.—The legislative construction that no such law existed before, is manifest by their express provision in 1864, [L. 64, Chap. 69, § 6] providing for the sale of adjacent real estate for street improvements.

8.  MUNICIPAL TAXES FOR IMPROVEMENTS: COLLECTION OF.—The power to sell and convey the real estate assessed, for the payment of assessments, is not necessarily incident to the power to 'levy and collect," nor indispensable to the purposes of municipal corporations.

9.  TAYLOR v. MILES, ante, p. 498, confirmed.

the bid, he may declare the bid cancelled, and sell the land again, or the contractor may sue the purchaser for the purchase money, and recover the same, with costs and ten per centum damages, and any person so neglecting or refusing to make payment, shall not be entitled, after such neglect, to have any bid, made by him, received by the treasurer during such sale.

"SEC. 16.   When any land shall be offered for sale for such taxes, it shall not be necessary to sell as the property of any particular person, and if it should be so sold, no misnomer of the owner or supposed owner, or any other mistake respecting the ownership of such land shall affect the sale, or render it void or voidable.

"SEC. 17.   If any parcel of land cannot be sold for the amount of taxes, penalty and charges thereon, the city treasurer shall bid off the same for the contractor for that amount.

"SEC. 18.   The city treasurer shall give to each purchaser on the payment of his bid, and if any lands are struck off to the contractor, then to the contractor, a certificate dated the day of the sale, describing the amount paid therefor, and that the purchaser will be entitled to a conveyance from the city at the expiration of two years from the date of the certificate, unless the same be sooner redeemed by the payment of the full amount of the tax for which said land was sold, and all taxes, general or special, subsequently paid by the purchaser, and all costs and charges thereon, together with twenty-five per cent per annum thereon."

The following are the findings of the court below, and together with the statements in the subjoined opinion afford a sufficient statement of the facts of the case: *First.*   On the 19th day of November, A. D. 1859, the United States of America, by patent of that date, granted

and conveyed to Jeremiah Clark, his heirs and assigns forever, in fee, the following described tract of land, situate in the county of Leavenworth, and State of Kansas, to-wit: Lot number one (1), in section number thirty-six (36), in township eight (8), of range twenty-two (22), said tract of land having been sold by the said United States to the said Clark, at the public land sale, held at Fort Leavenworth, in December, 1856, under the treaty of May, 1854, between the United States and Delaware tribe of Indians.

*Second.* The lot of land described in the plaintiff's petition, to-wit: Lot number fifteen (15), in block number twenty-four (24), in Clark and Rees' addition to Leavenworth City, in the county of Leavenworth, and State of Kansas, is a part and parcel of the tract of land patented to Jeremiah Clark, as aforesaid.

*Third.* On the 10th day of August, A. D., 1857, the said Jeremiah Clark and Florinda Clark, his wife, by warranty deed of that date, for the consideration therein mentioned, granted and conveyed the said lot number fifteen (15), in block number twenty-four (24), in Clark and Rees' addition to Leavenworth City, aforesaid, to Samuel F. Few, his heirs and assigns forever, and in and by said deed the said Clark covenanted to and with the said Few, that he would warrant and defend the title of said lot fifteen (15) unto the said Few, his heirs and assigns, forever.

*Fourth.* On the 4th day of April, A. D. 1862, at the March term, 1862, of this court, Clinton Cockerill, by the consideration of this court, recovered a judgment against said Samuel F. Few, Amos Rees and Jeremiah Clark for the sum of seven thousand six hundred and twenty-eight dollars ($7,628.33) and thirty-three cents, and costs of

suit, which judgment was recovered on confession of said Few, Rees and Clark.

*Fifth.* On the 16th day of June, 1863, an execution was issued on said judgment against the property of the said Samuel F. Few, Amos Rees and Jeremiah Clark, by the clerk of said county, directed to the sheriff of Leavenworth county, and said execution came to the hands of and was received by Alexander Repine, the then sheriff of said county on the said 16th day of June, 1863.

*Sixth.* Afterwards, on the said 16th day of June, A. D. 1863, the said sheriff having been unable to find any goods or chattles of said Few, Rees and Clark, or any or either of them, endorsed on said execution the words "no goods," and did then, on that day, levy the said execution upon the said lot number fifteen (15), above described, and other real property, as the property of the said Samuel F. Few.

*Seventh.* Afterwards, on the 17th day of June, 1863, the said sheriff, by A. W. Repine, under sheriff, called an inquest of three disinterested householders, residents of said county of Leavenworth, who were by him duly summoned and sworn to impartially appraise the property so levied upon, and said householders thereupon forthwith returned to said sheriff, under their hands, an estimate of the real value of said property, made upon actual view of such property.

*Eighth.* Afterwards, on the said 17th day of June, 1863, the said sheriff duly advertised the lands so levied upon for sale under said execution, but did not thereunder sell the aforesaid lot number fifteen (15) for want of a bidder therefor, and he so returned said execution.

*Ninth.* On the 23d day of September, 1864, the then clerk of said court issued another execution on said judgment to sell the aforesaid lot number fifteen (15), and

other property so levied upon, as aforesaid and directed, the same to the then sheriff of said county, who received the same on the 28th day of September, A. D. 1864 ; on the 7th day of November, 1864, by virtue of said execution, and after having caused public notice of the time and place of sale, to be given for more than thirty (30) days prior to. that time by advertisement, in a newspaper printed and in general circulation in said county, said sheriff sold said lot, number fifteen (15), to said Clinton Cockerill for the sum of one hundred dollars, that being two-thirds of the appraised value thereof, and the highest and best bid therefor ; and on the 23d day of November, 1864, said sheriff returned said execution to said court, with his proceedings thereunder endorsed thereon.

*Tenth.* On the 23d day of November, 1864, at the November term, 1864, of this court, this court after having carefully examined the proceedings of said sheriff, under said execution, entered an order on the journal, that it was satisfied of the legality of the same, and that the said sale be confirmed, and that the sheriff last aforesaid, make, execute and deliver to the purchaser aforesaid a good and sufficient deed for said lot to the purchaser.

*Eleventh.* Afterwards on the 12th day of December, 1864, John McKee, he then being the sheriff who sold said lot of ground, made to the said Clinton Cockerill a deed of conveyance of the property so sold, in which deed the substance of each of said executions, the names of the parties, the amount and date, and date of term and the condition of the judgment, by virtue whereof the said lands and tenements were sold as aforesaid, were recited, and also therein described, the order and entry made on the 23d day of November, 1864, which deed was duly executed and acknowledged by the said sheriff, in and by which deed the said sheriff granted and conveyed said

tract of land to said Clinton Cockerill, his heirs and assigns forever.

*Twelfth.* On the 5th day of March, A. D. 1869, said Clinton Cockerill, and Mary E. Cockerill, his wife, by deed of that date, for the consideration therein mentioned, granted and conveyed the said lot number fifteen (15) to John W. Spratley, the plaintiff in this action, his heirs and assigns forever.

And as conclusions of law :

The plaintiff, John W. Spratley, is the owner in fee of the aforesaid lot fifteen (15), in block twenty-four (24), of said addition, and is entitled to the possession thereof, to which conclusion of law, the defendants at this time excepted.

*J. McCahon,* for plaintiff in error.

*Clough & Wheat,* for defendant in error.

*McCahon, for plaintiff,* submitted :

1.  A proceeding to divest title by a sheriff's sale is a special statutory authority, and all the requirements of the statute must be strictly complied with. 4 *Cranch,* 403; 6 *How.,* [*U. S.,*] 14; 7 *id.,* 172, 181; 13 *Mass.,* 482, 489; 2 *id.,* 154; 49 *Maine,* 358; 42 *id.,* 414; 47 *id.,* 141–2; 1 *Verm.,* 359, 364; 4 *Zabr.,* 796; 4 *Metc.,* [*Ky.,*] 40; 3 *id.,* 524; 2 *id.,* 514; 40 *N. H.,* 173, 183; 10 *id.,* 296; 1 *Minn.,* 427; 20 *Wend.,* 240, 248; 11 *N. Y.,* 61, 71; 17 *Abb. Pr.,* 137; 20 *Barb.,* 148; 3 *id.,* 341; 9 *Conn.,* 42; 3 *G. Greene,* 387, 389; 2 *Kas.,* 115, 128; 12 *Iowa,* 153.

2.  The return of the sheriff should show that all the requirements of the statute have been complied with. 2 *Mass.,* 154; 8 *id.,* 284; 13 *id.,* 483, 488; 49 *Maine,* 358; 47 *id.,* 141, 142; 45 *id.,* 351; 42 *id.,* 414; 26 *id.,* 211; 15 *id.,* 73; 16 *id.,* 209; 2 *Caines,* 373; 19 *Verm.,* 451, 447; 9

*Conn.*, 42; 3 *G. Greene*, 387, 389; 1 *Ohio*, 27; 2 *Wall.*, 313,; 4 *Zabr.*, 796; 19 *Ill.*, 105; 2 *Kas.*, 340, 160, 174; 3 *id.*, 176, 281, 390, 397; 11 *Johns.*, 532.

3. The court upon the return of the writ, is required to carefully examine the proceedings of the officer and cause an entry to be made that it is satisfied of the legality of the sale. [*Code of '59*, § 449.] Hence the return should state facts, and not conclusions of law, so that the court can see whether the sale is legal or not. It is the court that is to judge of the legality of the proceedings, and not the sheriff. 1 *Mass.*, 86–88; 9 *id.*, 242–247; 7 *id.*, 392; 12 *Pick.*, 206; 2 *Foster*, 528; 1 *id.*, 400; 1 *Ohio*, 27; 18 *Pick.*, 495–496.

4. The law requiring an appraisement is not directory merely, and a sale without appraisement is void. 3 *G. Greene*, 489–497; 3 *Iowa*, 489; 3 *How.*, [*U. S.*,] 713; 6 *id.*, 21; 7 *id.*, 178; 2 *Mass.*, 154; 25 *Ind.*, 458; 2 *id.*, 65; 1 *Ohio*, 27; 6 *Wall.*, 756.

5. If the case of Smith against Cockrill, [6 *Wall.*, 756,] is of any force, and an appraisement is necessary to the validity of a sale, it must follow that such appraisement must be a legal one. If the appraisement cannot be dispensed with, neither can any substantial requirement thereof. The administration of the oath required by law to the appraisers is just as positively required by the statute and is just as essential as the appraisement itself. 2 *Mass.*, 154; 8 *id.*, 284; 8 *Greenl.*, 207–210; 1 *Ohio*, 27; 1 *Day*, 109; 1 *Conn.*, 301; 4 *Metc.*, [*Ky.*,] 61.

6. It is not sufficient to state in the return that the appraisers were duly sworn. It should appear how they were sworn. 1 *Mass.*, 86–88; 7 *id.*, 388; 18 *Pick.*, 495–496; 19 *Verm.*, 447–451; 1 *Ohio*, 27; 2 *Foster*, 528; 1 *id.*, 400; 9 *N. H.*, 177.

7. The statutory form of the oath must be pursued.

2 *Foster*, 528; 1 *G. Greene*, 106, 111; 2 *id.*, 270; 4 *id.*, 381; *Morris*, 417; 6 *Eng.*, 328, 455; 20 *Wend.*, 240–248; 4 *Metc.*, [*Ky.*,] 40; 3 *id.*, 524; 2 *id.*, 514, 573; 1 *East*, 64; 13 *U. S. Dig.*, 439, §§ 29, 30; 1 *Ohio*, 27; 2 *Eng.*, 59.

8. The certificate of the officer of the administration of the oath is part of the return, and is the best evidence of what oath was administered. 18 *Pick.*, 493, 496; 1 *Greene*, 106, 109.

9. A purchaser at sheriff's sale purchases with notice of all defects in the proceedings. [3 *How.*, [*U. S.*,] 713–715; 6 *id.*, 14–22; 12 *Barb.*, 240.] Especially when the judgment creditor is the purchaser. 2 *Blackf.*, 1; 2 *Caine's R.*, 61; 2 *Gilm.*, 152; 20 *Ill.*, 266.

10. The confirmation of the sale does not cure the defect. It cannot make that valid which is void. The proceedings of the officer do not become *res adjudicata* by the confirmation. 2 *Wall.*, 609; 3 *Kas.*, 276, 390.

11. Section 450 of the Code of 1859, which immediately follows the section in relation to the confirmation of the sale, provides that "the deed shall be sufficient evidence of the legality of such sale, and the proceedings therein until the contrary be proved." This can leave no doubt as to the intention of the legislature, that the legality of the proceedings should be open to subsequent investigation.

The defendants below could take advantage of any defect in the plaintiff's title. 13 *Mass.*, 483; 51 *Me.*, 21.

12. It is a well established rule that a plaintiff in ejectment must succeed upon the strength of his own title, and not on the weakness of his adversary's. A party in possession of real property is presumed to be the owner in fee, and before he can be ousted a complete title must be shown in the adverse claimant. In ejectment under the code it is not necessary to plead the

statute of limitations.  *Gen. Stat.*, 748, § 596; 11 *O. St.*, 442; 19 *Ark.*, 650; 13 *How.*, [*U. S.*,] 472, 473; 44 *Mo.*

13.  The law under which a tax deed is executed determines its effect.  If the law under which it is executed makes it *prima facie* evidence of the regularity of the prior proceedings, and that law is subsequently repealed, the deed still retains the effect given to it by the statute under which it was executed.  11 *Wisc.*, 353; 13 *id.*, 347; 17 *id.*, 556; 21 *id.*, 350; 11 *Paige*, 484; *Blackwell*, 351; 18 *Wisc.*, 59.

14.  The deed executed by the clerk on behalf of the city, reciting the authority under which it was done, and having the corporate seal attached, is valid.  3 *Barb. Ch.*, 528; *Blackwell*, 369.

15.  As to the extent to which a deed for special taxes is *prima facie* evidence *see L.*, '64, 128; *Blackwell*, 65, 90.

*Clough & Wheat, for defendants*, submitted:

1.  The first execution correctly describes the parties, bears the correct number of the case, and will be presumed to have been issued under the judgment in question, in absence of proof of other judgments; and as the execution was amendable in the matter of the thirty-three cents omitted, plaintiffs in error cannot, in this action, question the irregularity.  28 *Ill.*, 264; 17 *id.*, 154; 4 *G. Greene*, 201; 33 *Ala.*, 249; 15 *Abb. Pr.*, 230; 27 *Ga.*, 167; 28 *id.*, 353; 19 *U. S. Dig.*, 300, § 107; 20 *id.*, 405, § 140; 2 *N. Y.*, 451; 17 *Ark.*, 546; 4 *Wend.*, 462; 12 *Ark.*, 421; 16 *Ben. Munroe*, 43; 7 *Iowa*, 324; 3 *Coldwell*, 178, 201; 1 *Sneed*, 418; 3 *G. Greene*, 489.

2.  In relation to the appraisement matter we submit that the sheriff's return to the execution is sufficient.  12 *Allen*, 543; 19 *Ohio*, 67, 105; 9 *id.*, 37, 41; 5 *Ark.*, 78;

8 *Foster*, 473; 9 *Metc.*, 406, 413, 476; 4 *Verm.*, 616; 8 *id.*, 23, 417; 51 *Maine*, 14; 52 *id.*, 138, 220, 261; 26 *id.*, 442, 561; 35 *Ala.*, 144; 3 *Minn.*, 277; 1 *Curtis*, [*C. C.*,] 223; 15 *Ill.*, 100, 269; 33 *id.*, 359; *Hardin*, 63; 21 *U. S. Dig.*, 563, § 14; 6 *English*, 455.

3. A stranger cannot inquire into the alleged defects in said return, especially in this collateral way. [14 *O. St.*, 80; 9 *id*, 366; 12 *Ind.*, 192; 17 *Ill.*, 154; 33 *id.*, 359; 20 *Mo.*, 147; 25 *Penn. St.*, 103.] Especially when, from lapse of time, the defendant in the execution, whose property was sold, was barred from having such matter inquired into on proceedings to reverse. 4 *Scammon*, 364, 377.

4. The appraisement could be proven independent of the return, when confirmation was asked, or on any other occasion when that matter was called in question. [10 *Ind.*, 289.] The presumption is that the appraisers were properly sworn. [4 *G. Greene*, 510.] It was not necessary for the return to show anything about the form of the oath administered to the appraisers. 21 *Cal.*, 220; 12 *id.*, 128; 2 *G. Greene*, 39; 3 *Ben. Munroe*, 344–6; 10 *Ind.*, 291; 7 *Blackf.*, 154; 51 *Me.*, 14; 33 *Miss.*, 455.

5. The record shows that the appraisement was made upon actual view.

6. On the question of the tax deed it is submitted the city council did not, under that law, have power to sell lands for special taxes. 25 *Iowa*, 163; 20 *id.* 450; 23 *id.*, 413; 1 *Blackf.*, 336; 27 *Penn. St.*, 351; *Blackw. on Tax Titles*, 448, 449; 1 *Kas.*, 432; 31 *Mo.*, 185.

7. And, therefore, so much of said ordinance as provided for sale of lots for any special tax (assessment,) levied thereunder, was void.

In support of this proposition, as also in support of the proposition that the third subdivision of section 16, of

the code of 1868 (*Gen'l Stat.* '68, *p.* 633) does not refer to, or include sales made for assessments levied on account of improvements made, [*see* § 5, *Art.* 12 *Const.*,] wherein it appears that taxes and assessments are different matter; and see also 3 *Kas.* 186 ; 5 *Sneed*, 475 ; 20 *N. Y.*, 387, 388 ; 26 *Ill.*, 351 ; 13 *Iowa*, 23, 28 ; 23 *Barb.*, 272; 9 *Iowa*, 569 ; 9 *Humph.*, 217 ; 4 *Scam.*, 69, 75, 78 ; 11 *John.*, 80 ; 22 *Iowa*, 246 ; 39 *Ill.*, 485, 416 ; 21 *Wisc.*, 179, 269 ; 8 *Blackf.*, 581 ; 22 *Wisc.*, 173 ; *Blackw. Tax Tit.*, 449.

8. To the effect that each section, clause, sentence, and word of statutes, shall have effect given them, if possible, [*see* 22 *Pick.*, 573 ; 6 *Ind.*, 354; 1 *Wisc.*, 525 ; 19 *Verm.*, 230 ; 4 *Gilm.*, 272 ; 4 *Blackf.*, 148 ; 28 *Miss.*, 129.

9. As the words special, taxes and assessments and taxes are technical words and phrases, have at least acquired a peculiar and appropriate meaning, we submit limitation laws in relation to tax deeds should not be extended to deeds for assessments, or the so-called deeds for special taxes. *See Comp. L.*, 838, *Subd.* 2, *Gen. Stat.* 999.

10. The legislature has shown by its enactments that laws in relation to sale of lands for non-payment of taxes do not refer to, nor include assessments, even when the taxes referred to are city taxes, levied for either general or special purposes. *See Gen. Stat.* 132, §§ 1, 2 ; *p.* 136, 137, 138, §§ 23, 28 ; *L.* '67, *p.* 135, §§ 1, 2; *id.*, 138, 139, 140, §§ 2, 5 ; *L.* '64, *p.* 123, 124, §§ 2, 126, 127, §§ 3, 6; *Comp. L.*; *p.* 385, § 1, *Subd.* 1, 2 ; *id.*, 387, § 1, *Subd.* 22.

11. It will be noticed that said subdivision 1, says, "taxes for general and special purposes," and requires the same to be levied on the value of all taxable property within the city, whilst the special tax, that is assessments

mentioned in subdivision 22, was required to be levied on property situate within a half block of the improvement.

12.   Only a valid ordinance can be a basis for a valid tax deed for assessments.

13.   But section 119 [*Gen. Stat.*, 1058] is void, and we submit that it only has reference to city taxes, and not to assessments, and is not retrospective.   3 *Kas.* 186.

14.   Of course, a pretended ordinance, or part of an ordinance, previously void for want of power in the city council to pass it, was not by the laws of 1864, page one hundred and twenty-three, or by section 30 of the same amendatory act given life, re-enacted, or in any manner put in force.   3 *Kas.*, 503; 4 *Kas.*, 327.

15.   The deeds were not *prima facie* evidence of anything—and if not *prima facie* evidence, then before they were admissible in evidence it was incumbent on the parties offering the same to show that the statutes and ordinances in relation to the making of the improvement, selling the property, etc., had all been complied with.   *Blackw. Tax Tit.*, 451; 39 *Ill.*, 484; 38 *Barb.*, 608; 1 *Scam.*, 335; 18 *Ind.*, 303; 10 *Iowa*, 92; 5 *Ohio*, 369.

16.   The case made does not contain all of the evidence given on the trial of the action, and we suppose if this court should be of opinion that we have not herein above suggested sufficient reasons why said deeds should not have been received in evidence, that this court will at least presume said deeds were properly excluded, if for any reason they could have been.

*By the Court,* Safford, J.

This is a proceeding brought to reverse a judgment of the district court of Leavenworth county, whereby the defendant in error recovered from the plaintiffs in error

certain real estate, which is described as follows, to-wit: Lot fifteen, in block twenty-four of Clark and Rees' addition to the city of Leavenworth. There are several allegations of error, which are insisted upon as furnishing sufficient grounds for a reversal, as prayed for, and to these we shall direct attention as we proceed. It appears that on the trial below, the plaintiff, now defendant in error, showed title to the property in question from the government down to, and in Samuel F. Few. He then claimed to show a sheriff's sale of Few's title to Clinton Cockerill, and a conveyance by Cockerill to himself. In order to establish the fact that Few's title had been legally passed to and vested in Cockerill, as aforesaid, the plaintiff gave in evidence a judgment which was recovered by Clinton Cockerill against Samuel F. Few and Jeremiah Clark, in the district court of Leavenworth county, on the 4th day of April, 1862, for the sum of $7,628.33 and costs. To the introduction of this testimony there was no objection.

The plaintiff then offered in evidence an execution which recited the judgment above referred to, except as to amount (and this was stated in the execution to be $7,628), together with the sheriff's return as to what he had done under it, and the accompanying documents thereto attached. The return, among other things, showed a levy upon the lot in question in this case. It then goes on to recite relative to the appraisement thereof, " and after having so levied it by virtue of this execution, and on the 17th day of June, A. D. 1863, caused all of the foregoing described property  *   *   * to be appraised upon *actual view* of the same, by G. H. Ortman, A. O. Bangs and William Cranston, three disinterested householders, residents of said county of Leavenworth, they having first been *duly summoned and sworn*

by me to appraise the same impartially, (said appraisement herewith returned attached to this execution and marked A." The appraisement itself, after the entitling of the cause recites as follows: "We, G. H. Ortman, A. O. Bangs and William Cranston, disinterested householders residing in Leavenworth county, State of Kansas, having been by A. W. Repine, under sheriff of said county of Leavenworth, *duly sworn* to appraise the hereinafter described property levied upon in the above entitled cause, after first being sworn to return that upon *actual view* of said property, we find, etc."

The following certificate also appears to have been entered upon the appraisers' return:

"State of Kansas,     }
Leavenworth  County, }  ss.:

"I do hereby certify that the within named G. H. Ortman, A. O. Bangs and Wm. Cranston, are disinterested householders, residents of Leavenworth county in said state, and were by me *duly summoned and sworn* to value and appraise the within described property impartially, this the seventeenth (17th) day of June, A. D. 1863.

"Alexander Repine, Sheriff,
"by A. W, Repine, Under Sheriff."

The lot in question was not sold on the execution above referred to, by reason of a want of bidders, as it would seem, and the same was duly returned. Whereupon another execution was issued, reciting the judgment, the former execution, and what was done under it, towit: The *levy* and *appraisement,* and directing the sheriff to sell the property so levied upon and appraised, including the lot in controversy. That the officer proceeded regularly upon the second execution in respect of

all things therein required of him and sold the said lot to Clinton Cockerill, there seems to be no question.

This last mentioned execution, with the return of the sheriff's notice of sale, etc., thereto attached, was also offered in evidence, together with the first execution and the return, and documents thereto attached, as before stated. The defendants objected to their reception for the reasons: *First*, that the first-mentioned writ did not recite such a judgment as had been given in evidence, and, *Second*, substantially that there had been no regular and lawful appraisement of the property sold by reason of the omission of the words "upon actual view" in the oath of the appraisers, as referred to in the sheriff's return, and in his certificate endorsed on the appraisement itself. But the court overruled the said objections of defendants, and allowed the said writs of execution, and notices of sale and returns, and documents thereto attached, to be admitted and read in evidence; and to this ruling the defendants excepted. The plaintiff then gave in evidence the record of the confirmation of the sale made under and by virtue of the executions and levy aforesaid, and also a deed from the sheriff to Clinton Cockerill of the lot in question, made in pursuance of such sale. Then followed the offering of the deed from Cockerill to defendant in error. The question now is: Did the court below err in overruling the objections of the defendants, as above stated?

This question also involves a second, which EVIDENCE: Rec- may be stated as follows: Was it competent ord of Legal Proceedings. for the defendant below to attack the proceedings had in the district court in the case of Cockerill v. Few, *et al.*, on the ground and by reason of the alleged defects, in the collateral way in which they sought to do it in this case?

As we understand the law, the answer to this latter question must be in the negative. The limitation upon the extent of the inquiry, where the proceedings of courts of general jurisdiction are brought collaterally before other courts, is thus stated in the authorities: "When a court has obtained jurisdiction, it has a right to decide every question that occurs in the cause; and whether its decisions be correct or not, its judgment, until reversed, is regarded as binding in every other court." And again: "If the jurisdiction of the court attaches to the subject matter, the proceeding cannot be examined in a collateral way in another court." 2 *Peters' S. C. Rep.*, 157.

*Id: Impeaching the same collaterally.*

The same rule seems to have obtained and been followed in cases where proceedings subsequent to judgment have been collaterally drawn in question. Thus, in 8 Johnson's Report, 361, it was held that in an action of ejectment against a purchaser at sheriff's sale, the regularity of the execution could not be questioned, and that if such execution were voidable it might be so held, only at the instance of the party against whom it issued. *See also, to a similar purport*, 13 *Johnson*, 96; 16 *Johnson*, 537; 14 *O. St.*, 80.

*Id: Proceedings subsequent to judgment.*

So in this case we see no reason why the same doctrine should not apply to an irregularity occurring in the proceedings under and by virtue of the execution, if indeed it be true that any such did occur. We shall therefore hold that, inasmuch as the jurisdiction of the court over the subject matter and the person, in the case of Cockerill v. Few, *et al.*, appeared on the face of the proceedings, the errors or mistakes of such court, if any were committed, and the errors or irregularities of the kind and character which are claimed to have existed in the proceedings of the sheriff subsequent to the judg-

ment therein, and which are shown to have been passed upon and approved by the court, cannot be taken advantage of, corrected, or even examined, when brought up collaterally, as was attempted to be done on the trial of this case below. But even supposing there had been a direct proceeding instituted by the defendants themselves, or their lawful representatives, for the purpose of setting aside the execution and the doings of the sheriff under and by virtue thereof, in the case of Cockerill v. Few, *et al.*, for the reasons which have been urged against their validity here, we are satisfied that they must have been held as substantially correct, or at least in a condition to be made so without any stretch of power on the part of the courts, or in any manner prejudicing the rights of the parties concerned.

AMENDING AN EXecution.
Thus, in the matter of the variance between the first execution and the judgment upon which it purported and was claimed to have been issued, as to the amount recovered, this was clearly such a variance or mistake, as may always be corrected upon presentation to the courts, and therefore ought not to be held to vitiate the proceedings.

APPRAISEMENT OF Real Estate.
And in relation to the appraisement, we think it was a good one, inasmuch as the record fairly shows, that there was a substantial compliance with the spirit of the law, requiring it to be made, in each successive step taken therein, and also that the rights of the parties in respect thereto, were carefully guarded. It was made by three disinterested householders, residents of the county, in which the lands levied upon were situated. The appraisers were duly sworn to impartially appraise the property so levied upon, and they did so appraise it upon *actual view*. Certainly nothing more could have been done or accomplished to secure the just rights

of the parties, by a more strict compliance with the law, admitting for the sake of the argument, that the oath of the appraisers, as administered, did not contain the words, "upon actual view."

But looking to the return of the sheriff, the appraisement itself, and the certificate endorsed thereon, we cannot say that these words were omitted from such oath. The return of the sheriff says that the appraisers were duly summoned and sworn. The return of the appraisers recites that they, having been *duly* sworn to appraise, * * * * do return, etc., and the certificate endorsed on such return reiterates the first statement of the sheriff. If, then, these statements are each and all true, we think it only fair to conclude that everything which the law requires to be done in the administering of the oath, was so done. The word "duly" in such a connection covers all of the requirements of the law, and its meaning ought not to be narrowed down to the extent claimed by the counsel for the plaintiff in error. But it is unnecessary to pursue this discussion further, and we shall leave this part of the case, with the single remark that we find no error in the rulings of the court upon the evidence offered by the plaintiff below.

The next and perhaps by far the more important question in this case, arises upon the refusal of the court below, to allow certain special tax deeds, as they are called, to be read in evidence, for and on behalf of the three defendants, now plaintiffs in error. As a foundation for the introduction of such testimony it was admitted that the city of Leavenworth "was, during all the times when the proceedings were had in relation to the special taxes hereinafter mentioned, and ever since has been an incorporated city of more than fifteen thousand inhabitants." The defendants then offered and read in

evidence ordinance number 90 of said city, approved June 24th, 1863, and while the affairs of the city were being conducted under the provisions of chapter 46, of the laws of 1862, relating to the levy of special taxes, for the opening and improving of streets and alleys, etc., and in which the sale and conveyance of lands for the non-payment of such special taxes was provided for. They then offered as evidence what purported to be a special tax deed, for the lot in controversy, executed under said ordinance, and purporting to convey said lot to one of the defendants, A. A. Higinbotham. The said special tax deed bore date as of February 11th, 1867, and was recorded in the office of the register of deeds, in and for the county of Leavenworth, on the 2d day of March, 1867. They also offered a second deed of like character, which purported to convey the same lot to Henry and Daniel Shire. The last mentioned tax deed was executed under said ordinance, July 29th, 1868, and recorded in the office of the register of deeds aforesaid, July 31, 1868. Both of these special tax deeds, upon objection being made thereto by the plaintiff below, were ruled out by the court and not allowed to be read as testimony in the case. Was such ruling erroneous?

SPECIAL TAX Deeds.
It is claimed on behalf of the defendant in error that while the council of said city of Leavenworth, at the time of the passage of said ordinance number 90, were authorized by law to provide for the levy and collection of special taxes, for the purposes and in the cases intended to be covered by the provisions of said ordinance, they did not possess the power to provide for the sale and conveyance of lands for and by reason of the non-payment of such special taxes as was attempted to be done, and that by reason of such want of

power in the said city council, the tax deeds above referred to, were wholly void and conveyed no title.

Before proceeding to examine the questions here presented, it seems proper for us to call attention to certain general principles, respecting the powers of municipal corporations, which are regarded as well settled, and which may be stated as follows:

CORPORATIONS, Municipal: Powers.

Such corporations possess and may exercise those powers which are granted in express terms, also those necessarily implied or necessarily incident to the powers expressly granted, and lastly those which are absolutely indispensible to the declared objects and purposes of the corporation. In this connection it may also be stated, that it is regarded as a settled principle of law, that where there is a fair and reasonable doubt as to the existence of a power in such corporation, the courts will not uphold or enforce its execution.

LEAVENWORTH City: Its Powers.

In view of the principles thus expressed, we may now inquire as to the power of the city council of Leavenworth, to enact those provisions of the ordinance before referred to, which related to and attempted to authorize a sale and conveyance of real estate for special taxes. As to those provisions of said ordinance which provided for the levy of such special taxes, there is, as above intimated, no question; and indeed, there could be none, since the authority to enact them was expressly given by subdivision 22, section 1, of article 2, chapter 46, Laws 1862. But neither in the said subdivision 22, nor in any subdivision following, or immediately preceding it, or in which the subject of special taxes is treated of, is there to be found any provision which expressly conferred upon the said city council the right or power to provide for the enforcement of the collection of such special taxes, in the manner in which it

was attempted to be done in this instance. This will appear from a simple examination of those portions of the statute referred to, and the fact or conclusion thus arrived at, is naturally suggestive of two further inquiries: *First*, was such power anywhere else expressly conferred? and, *Second*, if not expressly, was it otherwise given, here or elsewhere?

In our opinion, the answer to the first inquiry must be in the negative. It will be seen, upon examination, that by virtue of subdivision two of the section, article and chapter before mentioned, the city council of Leavenworth had power "to provide for the sale of real estate for the non-payment of *any taxes* due thereon," and that this was the only provision relating to the subject of such sale for taxes which was in force at the time of the passage of the said ordinance number ninety. We have carefully considered the point, and as a result feel bound to say that we think that the word "taxes," as here used, has no reference whatever to the special taxes provided for in subdivision twenty-two, but that it is applicable to, and relates only to the taxes for general and special purposes mentioned in the preceding subdivision one. Several grounds for argument in support of this proposition are suggested, to some of which, we may briefly call attention.

POWER TO SELL
Lots on Special
Tax.

And first: The power of cities in relation to the levying of taxes and their power of assessment, or of levying special taxes, are treated of as separate, distinct and independent powers whenever mentioned in either the constitution or the laws of the state; see section five, article twelve of the constitution, and subdivisions one and twenty-two above referred to, as illustrative of this point. This fact, of itself, goes far in showing, that when the word taxes is used in any law, it

CONSTITUTIONAL
Provisions.

is not meant thereby to include assessments or special taxes.    But this is not all.    There are radical differences existing between taxes for general and special purposes, and assessments for street improvements; and they are made to operate differently, and upon different objects. For example: the taxes referred to are authorized to be levied "on the value of all the taxable property within the limits of any city," etc., while such special taxes are only allowed to be levied and collected from the real estate adjacent to the improvements made.    It is also to be observed that taxes for general purposes affect every tax payer within the jurisdiction of the taxing power, while on the other hand, these special taxes may and do affect but few, at least comparatively.

But we have still stronger evidence of the CHARTER POWERS in Special Tax- truth of the position we have here taken, in ation. the fact that long after the passage of the act to which reference has been so often made above, the legislature of the state saw fit to extend the power of cities in relation to the sale of real estate for non-pay-ment of taxes so that it might include the power to sell for the non-payment for special taxes.    This was done by express enactment, [*L.* 1864, *Chap.* 69, § 6,] which amended the law of 1862 containing the provisions under consideration.    If such power was conferred by subdivision two of section one, article two, chapter forty-six, Laws 1862, then why was it again conferred in chapter sixty-nine, Laws 1864?    It is plain that at least in the opinion of the legislature of 1864, the power of sale and conveyance of real estate for the non-payment of special taxes for the purposes named, did not exist under any express provision put in force by previous legislation. Such view accords with our own, as above stated, and this brings us to the consideration of the second question

before proposed. And first, in this connection is suggested the remark, that in the point last made, is to be found an argument directly applicable here, and one which is entitled to no little weight. But there are arguments other than this which bear upon this question, and which to our minds are decisive of it.

From what has already been said, it seems to follow that the power which the city council of Leavenworth assumes to exercise in the ordinance referred to, and to which objection is taken, if conferred at all, was so conferred by subdivision 22 before mentioned, and that too by implication, or as a necessary accompaniment of the power therein expressly granted. This was substantially "the power to levy and collect special taxes, for the improvement of streets and alleys on adjacent real estate in manner as should be provided by ordinance." It has been repeatedly held by the courts of other states, that the power to levy and collect taxes does not carry along with it the power to enforce such collection by a sale and conveyance of the property upon which levy has been made. [20 *Iowa*, 450; 23 *id.*, 410; *Blackw. on Tax Titles, Ed.* '64, 448; 25 *Iowa* 170.] One ground (and perhaps the most important and valid, and, in our opinion at least, a sufficient one) upon which these decisions rest, is that such power of sale is not a necessary incident to the power to "levy and collect," nor indispensible to the objects and purposes of a municipal corporation. The power to levy and collect can be exercised and enjoyed, and the objects of the corporation secured without the power of sale. Thus, in case this way of enforcing the collection of taxes or assessments is withheld or unauthorized, such corporation may provide another method, by means of which the collection may be secured, as for instance, by judicial proceedings.

*Power to Sell Lots for Special Tax.*

[23 *Iowa*, 410'; 25 *id.*, 170; *Blackw.*, 448, *and authorities cited.*] But in this instance as already stated, the grant is of authority to levy and collect in manner as should be provided by ordinance. Do these words, in manner, etc., change the doctrine as held in the authorities above quoted, as applicable to the case under discussion? We think not, and certainly not to the extent of investing the city council with power to provide for the sale of the real property of delinquent tax-payers. Another argument in favor of the position that no power of sale is conferred by subdivision 22, is to be drawn from the fact that while such power is expressly conferred in subdivision 2, in respect of general taxes, nothing whatever is said about it as relating to special taxes, either in said subdivision 2, or in subdivision 22, which authorizes their levy, or elsewhere, such omission it would seem fair to presume, was intended, and especially when considered in the light of subsequent legislation. But it is perhaps unnecessary to pursue this discussion, although other arguments still are suggested as being pertinent to the points raised. Enough has already been advanced, as we think, to justify us in saying that it has been shown that the city council of Leavenworth, acted without express authority of law in the passage of those provisions of ordinance number 90 which attempted to provide for the sale and conveyance of real estate for the non-payment of special taxes for the improvements of streets and alleys. In our opinion it has also been shown that such power of sale and conveyance was not necessary to the exercise and enjoyment of any other power expressly granted, and that it could not therefor be held to exist by necessary implication. We have, perhaps, gone much farther than was necessary in attempting to demonstrate the truth of the foregoing propositions, inasmuch as the

rule of law, stated in the early part of this discussion, would only make it imperative upon us to discover that fair and reasonable doubts existed as to the power of the city council in the premises to which objection is urged in order to enable us to declare against such power. It is to be hoped, however, that even in this view our investigation, as showing more than such fair and reasonable doubts, is not devoid of interest. A single remark may be made with respect to the effect which chapter 69, of the laws of 1864, might be supposed to have upon the questions involved. There is, in our judgment, no room for argument upon this point. The ordinance in question was passed long before said chapter 69 took effect, and therefore it could not be held to have been supported by, or enacted in pursuance thereof. From the premises or conclusions as above stated, it seems to follow that the tax deeds which were executed in pursuance of said or-ordinance and offered in evidence on the trial below were absolutely void, for the reason that they were so executed without sufficient authority of law. Such being the case they were properly ruled out by the court, unless the statute of limitations in respect of tax deeds [§ 116, *Chap.* 107, *L.* 1868] should be held, as operating to prevent such objection to the deeds from being made available. But it has already been decided at the present term of this court, that a void tax deed will not start the statute of limitations to running in favor of the holder thereof. See case of Taylor v. Miles, [*ante, p.* 498,] to which reference is here had, and it makes no difference as to the grounds upon which such tax deed is shown to be void. It is enough that it is so. We therefore think that there was no error in the rejection of the special tax deeds offered in evidence by the plaintiff in error on the trial below. Judgment affirmed. All the justices concurring.