STATE OF NEBRASKA, EX REL. FRANK T. RANSOM, V.
H. B. IREY, COUNTY TREASURER.

FILED OCTOBER 16, 1894.    No. 7068.

1. **Municipal Corporations: POWERS.**  A municipal corporation
   possesses only such powers as are expressly conferred upon it by
   statute, or are necessary to carry into effect some enumerated
   power.

2. ———: ———: STREET IMPROVEMENTS: SPECIAL ASSESSMENTS.
   The power "to levy and collect special taxes and assessments "
   upon real estate to pay the cost of street improvements, expressed
   in section 69 of the act governing cities of the metropolitan

class, does not alone carry with it, or include, the power to sell the real estate upon which such tax or assessment is imposed, in case of non-payment.

3. ———: Special Assessments.  The mode designated by said section, for the collection of special taxes or assessments by distress or sale of personal property, is not the exclusive method provided by the legislature for enforcing payment of such special taxes.

4. ———: ———.  Whether the clause contained in said section, providing for the seizure and sale of property for the satisfaction of special taxes, is constitutional is not decided.

5. ———: ———.  The term "all municipal taxes" employed in section 83 of chapter 12a, Compiled Statutes, does not include or cover special taxes levied against real estate by the city for the improvement of streets and alleys.

6. Metropolitan Cities: Special Taxes: Sale of Land by County Treasurer.  Section 91 of said chapter, construed in the light of prior and subsequent sections, confers authority upon the county treasurer to sell real estate for the non-payment of special paving assessments, legally levied thereon by a city of the metropolitan class, although there are no delinquent state, county, or general municipal taxes of any kind against the same property.

Original application for *mandamus*.

See opinion for statement of the case.

*Frank T. Ransom*, relator, *pro se:*

The county treasurer of Douglas county has authority, and it is his duty, to sell real estate upon which the city of Omaha has duly levied a special assessment authorized by law, and which special assessment is delinquent and unpaid, there being no general taxes of any kind delinquent against the property upon which the assessment was levied and is delinquent. (2 Dillon, Municipal Corporations [4th ed.], sec. 819; *City of St. Louis v. Russell*, 9 Mo., 507; *City of St. Louis v. Allen*, 13 Mo., 412; 2 Desty, Taxation, p. 748; Burroughs, Taxation, p. 435.)

*George W. Poynton, contra,* cited: *Hanscom v. City of Omaha,* 11 Neb., 44; *Ham v. Miller,* 20 Ia., 450; *Merriam v. Moody,* 25 Ia., 163; *McInerny v. Reed,* 23 Ia., 410; *Richardson County v. Miles,* 14 Neb., 313; *Felt v. Felt,* 19 Wis., 193*; *City of Covington v. McNickle,* 18 B. Mon. [Ky.], 286; *Peyton v. Moseley,* 3 Mon. [Ky.], 77; *Fosdick v. Village of Perrysburg,* 14 O. St., 486; *State v. Stoll,* 17 Wall. [U. S.], 425; *Mack v. Jones,* 1 Fos. [N. H.], 393; *Sharp v. Speir,* 4 Hill [N. Y.], 76; *Bergen v. Clarkson,* 1 Hal. [N. J.], 352; *Doe v. Chunn,* 1 Blackf. [Ind.], 336.

*John P. Breen,* also for respondent, cited: Welty, Law of Assessments, sec. 310; *Craw v. Village of Tolono,* 96 Ill., 255; *Taylor v. Palmer,* 31 Cal., 249; *Mix v. Ross,* 57 Ill., 123; *Neenan v. Smith,* 50 Mo., 529; *Carlin v. Cavender,* 56 Mo., 286; *City of St. Louis v. Bressler,* 56 Mo., 351; *City of Seattle v. Yesler,* 1 Wash., 576; *State v. City of Newark,* 36 N. J. Law, 478; *State v. Taylor,* 59 Md., 338; *McPhee v. Venable,* 77 Ga., 772; *Ansley v. Wilson,* 50 Ga., 418; *Holbrook v. Dickinson,* 46 Ill., 285; *Bucknall v. Story,* 36 Cal., 67; Black, Tax Titles, sec. 153; Cooley, Taxation [2d ed.], pp. 656, 672; 2 Dillon, Municipal Corporations [4th ed.], sec. 769; Endlich, Interpretation of Statutes, sec. 154; *City of Clinton v. Henry County,* 115 Mo., 557; 1 Blackwell, Tax Titles [5th ed.], secs. 396, 413, 521, 591; *Alexander v. Pitts,* 7 Cush. [Mass.], 503; *Chouteau v. Hunt,* 44 Minn., 173; *Sioux City & P. R. Co. v. Washington County,* 3 Neb., 41; *Richards v. County Commissioners, Clay County,* 40 Neb., 45; *McCann v. McLennan,* 2 Neb., 289; *Kittle v. Shervin,* 11 Neb., 65.

NORVAL, C. J.

This is an original application for a peremptory writ of *mandamus* by the state, on the relation of Frank T. Ransom, against H. B. Irey, treasurer of Douglas county, to

compel defendant to accept and receive from relator the amount of paving taxes assessed by the city of Omaha against the west 34½ feet of the north 90 feet of lot 19 in John I. Redick's Addition to Omaha, to sell said real estate to relator at private sale, and to make and issue to him the usual statutory certificate of sale. The cause is submitted upon a general demurrer to the application.

It will not be necessary to set out a copy of the petition in this opinion, or to give even a synopsis thereof, since but a single question is raised by the record for our consideration, namely: Has the treasurer of Douglas county the power or authority to sell real estate for delinquent special paving assessments legally imposed by the city authorities of Omaha, there being no delinquent state, county, or general municipal taxes of any kind against the property upon which such special assessment was levied and is ·delinquent? This question is a new one, it being now for the first time presented to this court for adjudication, and, in order to reach a correct decision, it will be necessary to examine and construe certain provisions of the act of the legislature governing cities of the metropolitan class. At the outset we remark that it is a well settled doctrine that a municipal corporation possesses only such powers as are expressly conferred upon it by the legislature, or are necessary to carry into effect some enumerated power; and this principle applies in the matter of levying municipal taxes and making local assessments, and extends as well to the mode of their collection. (2 Dillon Municipal Corporations [4th ed.], secs. 763, 769, 815; *Hanscom v. City of Omaha,* 11 Neb., 44; *City of St. Louis v. Russell,* 9 Mo., 507; *Sharp v. Speir,* 4 Hill [N. Y.], 76; *Merriam v. Moody,* 25 Ia., 163; *Mays v. City of Cincinnati,* 1 O. St., 268; *City of Leavenworth v. Norton,* 1 Kan., 432; *Burnes v. City of Atchison,* 2 Kan., 455; *Paine v. Spratley,* 5 Kan., 525; *Doe v. Chunn,* 1 Blackf. [Ind.], 336.) In *Sharp v. Speir, supra,* Bronson J., observes: "A corpora-

State v. Irey.

tion must show a grant, either in terms or by necessary implication, for all the powers which it attempts to exercise; and especially must this be done when it claims the right, by taxing or otherwise, to divest individuals of their property without their consent." In 2 Dillon, Municipal Corporations, at section 763, the author lays down this rule: "It is a principle universally declared and admitted that municipal corporations can levy no taxes, general or special, upon the inhabitants or their property unless the power be plainly and unmistakably conferred. It has, indeed, often been said that it must be specifically granted in terms; but all courts agree that the authority must be given either in express words or by necessary or unmistakable implication, and that it cannot be collected by doubtful inferences from other powers, or powers relating to other subjects, nor can it be deduced from any consideration of convenience or advantage. * * * It is important to bear in mind that the authority to municipalities to impose burdens of any character upon persons or property is wholly statutory, and, as its exercise may result in a divestiture and transfer of property, it must be clearly given, and strictly pursued. This rule applies, as we have already seen, to proceedings by municipal corporations under the delegated right of eminent domain, and it extends equally to proceedings under the taxing power, including special assessments for local improvements." This court in *Hanscom v. City of Omaha, supra,* in discussing the powers vested in municipal officers to levy or impose special assessments, uses this language: ."Their authority is derived wholly from the statute, and they have no powers except such as are expressly given or are incidentally neces-ary to carry the same into effect; and their actions in excess of such powers are absolutely null and void."

In the light of the doctrine announced in the foregoing authorities let us examine the various provisions of the act

governing cities of the metropolitan class, known as the "Omaha Charter," which bear upon the question under consideration.

By section 69, chapter 12a, Compiled Statutes, 1893, it is provided: "The mayor and council shall have power to open, extend, widen, narrow, grade, curb, and gutter, park, beautify, or otherwise improve and keep in good repair, or cause the same to be done in any manner they may deem proper, any street, avenue, or alley within the limits of the city, and may grade partially or to the established grade, or park or otherwise improve any width or part of any such street, avenue, or alley, and may also construct and repair, or cause and compel the construction and repair of sidewalks in such city, of such material and in such manner as they may deem proper and necessary; and to defray the cost and expense of improvements, or any of them, the mayor and council of such city shall have power and authority to levy and collect special taxes and assessments upon the lots and pieces of ground adjacent to or abutting upon the street, avenue, alley, or sidewalk thus in whole or in part opened, widened, curbed, and guttered, graded, parked, extended, constructed, or otherwise improved or repaired, or which may be especially benefited by any of said improvements; *Provided*, That the above provisions shall not apply to ordinary repairs of streets or alleys, and one-half of the expense of bringing streets, avenues, alleys, or parts thereof, to the established grade shall be paid out of the general fund of the city, except as otherwise hereinafter provided; *Provided*, That where any street is to be graded under the provisions provided by this section, but not to the established grade, it shall be done only after the owners representing a majority of the front feet of the property abutting on the part of such street to be so partially graded shall have petitioned the city council for such work to be done; *Provided further*, That whenever the owners of the lots

abutting upon any street or alley, or part thereof, within said city representing three-fifths ($\frac{3}{5}$) of the feet front abutting upon such street or alley desired to be graded shall petition the council to grade such street or alley, or part thereof, without charge to the city, the mayor or the council may order the grading done, and assess the cost thereof against the property abutting upon such street or alley, or such part thereof so graded. The total cost of such grading shall be levied and collected in a single payment upon the completion of such work; or, upon petition of not less than three-fifths ($\frac{3}{5}$) of the feet front along the street or alley so graded, the cost may be made payable in ten (10) equal installments extending over a period of nine years, in the same manner, at the same rate, and subject to the same conditions as are payments for paving, curbing, guttering, and like improvements hereinafter specified. In case of such installment payment the mayor and council shall by ordinance create districts embracing the property represented by such petition, and abutting or which said grading was done, to be known as grading districts and numbered consecutively. * * * The cost of improving the streets and alleys within any improvement district, except the paving of intersection of streets and space opposite alleys within such district, shall be assessed upon the lots and lands abutting upon the streets and alleys in such district, in proportion to the feet front so abutting upon such streets and alleys. The assessments of special taxes for improvement purpose herein provided for shall be made as follows: The total costs of the improvements shall be levied at one time upon the property and become delinquent as herein provided. One-tenth ($\frac{1}{10}$) of the total amount shall be delinquent in fifty days after such levy, one-tenth ($\frac{1}{10}$) in one year, one-tenth ($\frac{1}{10}$) in two years, one-tenth ($\frac{1}{10}$) in three years, one-tenth ($\frac{1}{10}$) in four years, one-tenth ($\frac{1}{10}$) in five years, one-tenth ($\frac{1}{10}$) in six years, one-tenth ($\frac{1}{10}$) in seven years, one-tenth ($\frac{1}{10}$) in eight years,

State v. Irey.

one-tenth ($\frac{1}{10}$) in nine years; each of said installments, except the first, shall draw interest at the rate of six per cent per annum from the time of levy aforesaid until the same shall become delinquent, and after the same shall become delinquent, interest at the rate of. one (1) per cent per month, payablé in advance, shall be paid thereon as in the case of other special taxes. Such taxes shall be collected and enforced as in other cases of special taxes. In all cases of special taxes, the city treasurer shall have the right and authority, after the same or any part thereof shall have become delinquent, to seize personal property of the party who owns the real estate·upon which such taxes have been levied, and to sell such personal property for the satisfaction of such taxes, upon the same advertisement and in the same manner that constables are now authorized by law to seize and sell personal property upon execution; but failure to seize and sell personal property shall in nowise affect the lien of the tax, or any proceedings authorized by law to enforce the tax.   *   *   *   *And provided further*, That whenever the property owners representing three-fifths ($\frac{3}{5}$) of the feet frontage of lots or lands upon any street or alley, or part thereof, shall petition the city council to create an improvement district including street and alley intersections, if any, and to have the same improved without cost to the city, then, and in that case, the council shall˙ have power to create such district and cause a contract to, be made for such improvement, and to assess and levy a special tax upon all lots or lands within such improvement district so created, to pay for the said improvement, within the same, including the intersection of streets and alleys, if any.   *   *   *   Whenever the mayor and council shall enter into or shall have entered into a contract with any paving contractor to keep the pavement in any paving or street improvement district in repair for a term of years for a specified price per year, said mayor and council shall have the power and it shall

17

be their duty to levy annually a special tax and assessment upon all the property in the paving or street improvement district to cover the cost of said repairs. Such special tax shall be levied and collected as in other cases of special taxes."

Sections 70 and 71 relate to paving between the rails and tracks of street railways.

Section 72 authorizes and makes it the duty of the mayor and council to require water, gas, and sewer connections to be made in a paving district before the work of paving or repairing is done therein, under such regulations as shall be prescribed by ordinance, and, in certain contingencies, " to assess the cost of any sewer connections upon the property opposite such connections, and to such depth as the council, sitting as a board of equalization, shall deem just and equitable."

By section 73 all special taxes to cover the costs of any public improvement authorized by the charter are required to be "levied and assessed on all lots, parts of lots, lands, and real estate bounding, abutting, or adjacent to such improvement, * * * to the extent of the benefits to such lots, parts of lots, lands, and real estate by reason of such improvement."

Section 74 provides how the real estate shall be described in making a levy or assessment of any tax.

Section 75 declares that " the cost and expense of grading, filling, culverting, curbing, guttering, or otherwise improving, constructing, or repairing streets, avenues, alleys, and sidewalks, at their intersections, may be included in the special tax levied for the construction or improvement of any one street, avenue, alley, or sidewalk, as may be deemed best by the council."

Section 76 fixes the time when special taxes for street improvements shall be levied.

Section 77 reads as follows: " When any special tax is levied it shall be the duty of the city clerk to deliver to the

city treasurer a certified copy of the ordinance levying such tax, who shall without delay give at least five days' notice through the official paper of the city, of the time when such tax will become delinquent. To every such certified ordinance the city clerk shall append a warrant in the usual form, requiring the city treasurer to collect such special tax or taxes by distress and sale of the goods and chattels of the person, persons, or bodies corporate owning [owing] any such special tax or taxes, if the same be not paid before the time fixed for the same to become delinquent."

It will be observed that in neither of the foregoing sections, except the first and last quoted, is the mode or manner of collecting special taxes for street improvements in express terms specified, and in none of the provisions of the charter to which reference has yet been made is it distinctly declared that any special tax or assessment, in case of non-payment, may be collected by the sale of the real estate against which the same has been levied. Nor do we think that it can be successfully maintained that the sections quoted above, when construed either separately or together, impliedly confer the right to enforce the collection of assessments imposed for street improvements by the sale of the property adjacent to such improvements. We have not overlooked the fact that by section 69 the mayor and council are expressly empowered to "levy and collect special taxes and assessments" to defray the costs of paving, and that section 73 authorizes all special taxes to cover the costs of any public improvement to be "levied and assessed on the real estate abutting on such improvement;" but there is no room for doubt that the power thereby granted to a municipal corporation "to levy and collect special taxes and assessments" does not impliedly authorize the sale of real estate in case of the non-payment of a special tax or assessment due thereon. It is not indispensable to the declared objects and purposes of the municipality, nor is it necessary to carry into effect any enumerated

or express power conferred upon the corporation by the charter, that special assessments for street improvements should be collected by the sale and conveyance of the property on which the same was levied, since, where no express mode for the collection of taxes or special assessments is provided by law, their payment may be enforced by judicial proceedings instituted by the corporation. (2 Dillon, Municipal Corporations, sec. 818; *Bergan v. Clarkson*, 1 Hal. [N. J.], 428; *McInerny v. Reed*, 23 Ia., 410; *Merriam v. Moody*, 25 Ia., 163; *Paine v. Spratley*, 5 Kan., 525.) Again, the legislature, by sections 69 and 77, has provided, in unequivocal language, a mode for the collection of special taxes and assessments by distress and sale of personal property. The point is made that this is the exclusive method provided by the legislature for the collection of special benefit assessments. This position is not at all tenable, for section 69, copied above, after providing for the seizure and sale of personal property for the satisfaction of special taxes, in unmistakable language declares that the "failure to seize and sell personal property shall in nowise affect the lien of the tax, or any proceedings authorized by law to enforce the tax." The inference to be drawn from this language is that the legislature did not suppose that the only remedy given for the collection of these special taxes was by the sale of personalty; but that the law-makers intended to and did provide another mode of collection than by the distress and sale of personal property of the party owing the tax. That they have done so will be shown further on.

It is also argued by counsel for respondent that the provisions of said sections relating to the sale of personalty are inimical to section 6, article 9, of the state constitution, and are therefore void, and numerous decisions are cited in the brief in support of the proposition. An examination of the subject discloses a conflict in the authorities, but in our view it is not deemed necessary that the question should be passed upon at this time, inasmuch if said provisions should

be held invalid, it would not aid in the solution of the precise point involved in the case. This must be patent to every one, since if the power exists to sell personalty to pay the costs of street improvements, yet it would not include the authority to sell real estate for the same purpose. We are also fully persuaded, after considerable research and investigation, that the power to "levy and collect special taxes and assessments" conferred by said sections 69 and 73 does not include, or carry with it, the power to sell real property for the payment of any delinquent special tax or assessment. This proposition is abundantly supported by authority. A noted text-writer, in discussing the power of municipal corporations in the matter of the collection of revenues, says : "The power to levy and collect a tax, whether general or special, does not carry with it the authority to collect by distress or sale of property or in any way more summary than by resort to legal proceedings. * * * Municipal power to collect by distress and sale cannot be implied because the state collects its taxes in this manner. It must be given, if not in express terms, yet by the clearest and most indubitable implication." (2 Dillon, Municipal Corporations, sec. 818. See 2 Desty, Taxation, 747 ; Cooley, Taxation [2d ed.], 672 ; *Ham v. Miller*, 20 Ia., 450 ; *McInerny v. Reed*, 23 Ia., 410 ; *Merriam v. Moody*, 25 Ia., 163 ; *Paine v. Spratley*, 5 Kan., 525 ; *City of Leavenworth v. Laing*, 6 Kan., 274.)

It is insisted by the relator that the power given cities of the metropolitan class by section 69, copied above, to "levy and collect" special assessments, when taken in connection with other sections of the charter and provisions of the revenue law not heretofore mentioned in this opinion, authorizes the sale of real estate for the non-payment of special taxes for the improvements of streets and alleys. The respondent contends that there is no such authority, especially where there are no delinquent general state, county, or municipal taxes against the property. It is well

settled that, in construing a legislative enactment, all of its provisions must be considered together, and this principle applies equally in the interpretation of city charters. Mr. Desty, in his valuable treatise on Taxation (vol. 2, p. 748) states the rule thus: "In construing charters all the provisions must be considered together, and a provision in one part for the redemption of property from sale clearly implies the power of sale, and, in connection with the power to 'levy and collect,' justifies the exercise of the power of sale for non-payment of the taxes." We entertain no doubt that while the power to levy and collect taxes will not alone confer the right upon the municipality to collect by a direct sale, yet these words may give such authority in connection with other charter provisions on the same subject, which unequivocally and plainly assume and recognize the existence of a power of sale. The doctrine just stated is in the language used by Judge Dillon in his work on Municipal Corporations, (vol. 2, sec. 819), and is fully sustained by the adjudications. The supreme court of Missouri, in *City of St. Louis v. Allen*, 13 Mo., 412, say: "We admit that the power to levy and collect taxes, when given to a corporation, does not necessarily imply a power to sell lands for the non-payment of the taxes thereon. There are other modes of collecting a tax than by immediate sale of the land. Suit may be brought, judgment obtained, and execution issued as for other debts; but it must also be admitted that the ordinary method of collecting taxes on land, and the only one resorted to by the state herself, is by a direct sale of the property taxed. The words 'levy and collect,' therefore, though not of necessity implying a power of sale, and, consequently, not to be conceded to a municipal corporation by mere implication, are yet capable of receiving such a construction, and when the legislature in the same charter inserts other provisions distinctly and unequivocally assuming the existence of such power, we regard such subsequent assumption or admission as a legis-

lative interpretation of the previous language." The same principle was held and applied in *City of Carondelet v. Picot*, 38 Mo., 129, and *City of St. Louis v. Russell*, 9 Mo., 507.

We will now examine some other provisions of the act governing cities of the metropolitan class, which we have not heretofore in this opinion mentioned.

Section 83 provides: "All municipal taxes shall be collected from the personal property of the person, persons, or body corporate owning the same, whenever the same is practicable, and whenever personal property cannot be found belonging to any such person, persons, or bodies corporate, then, in that case, all such delinquent taxes as may have been levied on any real estate within such city shall be collected by the county treasurer of the county in which such city is situated, by sale of such real estate, the same as in case of delinquent county taxes." The foregoing provision has reference alone to the collection of taxes levied by the corporation for general city purposes. That the words "all municipal taxes," in the section just quoted, do not include or cover special taxes or assessments imposed by the mayor and council for improvements is plain. The power of cities relating to the levying of taxes for general purposes, and their powers of levying special taxes or assessments, are treated of in the statute as separate, distinct, and independent powers. Again, in the charter in the section immediately preceding, and in the one following section 83, as well as in several other places in the act, the words "municipal taxes and special assessments," or other similar expressions, are used, thereby clearly indicating that it was not the legislative will that section 83 should apply to special assessments. Thus, section 82 declares that "all municipal taxes and all local or special assessments in such city shall be paid in cash;" and by section 84 authority is conferred upon the mayor and council to enact ordinances "to secure the speedy and thorough collection of all muni-

cipal taxes and special assessments." If the law-givers had contemplated that "municipal taxes" should embrace "assessments or special taxes" levied to pay the costs of improvements, it is fair to presume that they would have employed language which clearly indicated such purpose. To us it is clear that local assessments are not "municipal taxes" in the sense in which that expression is used in the charter. If, therefore, the grant of power to municipal corporations to sell real estate for the non-payment of special assessments exists, it must be found elsewhere than in said section 83, for the authority therein conferred to sell for non-payment of taxes gives no power to sell for mere local assessments. (Desty, Taxation, 748; *Sharp v. Johnson*, 4 Hill [N. Y.], 92; *Sharp v. Speir*, 4 Hill [N. Y.], 76; *Paine v. Spratley, supra.*)

We will now refer to the other provisions of the charter relied upon by the relator as showing authority for the sale of the real estate in controversy to pay the local assessment, the same being sections 91, 92, and 93, which read as follows:

"Sec. 91. It shall be the duty of the city treasurer, on or before the first Monday in September of each year, to make out a complete delinquent list of all lots, lands, or parcels of real estate, the taxes and assessments on which, for the preceding year, remain uncollected at that time, with the amount of such taxes or assessments, together with penalty and interest due from each lot or parcel of real estate set opposite the same; arranging the several lots, lands, or parcels of real estate in such list in the order that they appear on the tax list; stating also in each case the purpose for which the tax or assessment was levied. The county treasurer shall receive such delinquent list, and he shall advertise the real estate therein described for sale for such delinquent taxes or assessments at the same time he advertises the sale of real estate for delinquent taxes, by adding the amount of such delinquent city taxes and as-

sessments to the amount of delinquent state, county, and other taxes, and he shall sell such lots, lands, or parcels of real estate for the purpose of paying all such delinquent taxes and assessments, and shall credit such city for the amount of taxes or assessments so collected, which shall be subject to the order of the treasurer of such city. In the sale of any real estate as above provided for, and in the giving of certificates of sale and tax deeds therefor, the county treasurer shall proceed in the same manner as is or may be provided by law for his proceedings in the sale of real estate for delinquent county taxes, and with like power and authority; and the real estate so sold may be redeemed within the time and upon the same terms and conditions, in every respect, as is or may be provided by law for the redemption of real estate sold for delinquent county taxes; *Provided*, That under this act the county treasurer shall be authorized to collect only by sale of real estate; *And provided further*, It shall be the duty of the city treasurer, upon any taxes being collected by him after the delinquent tax list shall have been delivered to the county treasurer, to forthwith notify the county treasurer of such collection, that the same may be canceled on the delinquent tax list; *Provided further*, That the failure, neglect, or refusal of the city treasurer to make the tax assessed against any real estate by distress and sale of the personal property of the owners thereof shall not in anywise affect or invalidate the sale of such lands for such tax.

"Sec. 92. Municipal taxes and special assessments upon real estate in any such city are hereby made a perpetual lien thereupon from the day on which the same were levied against all persons or bodies corporate, except the United States and this state. Any person or body corporate purchasing any real estate for any tax or assessment levied by the authorities of any city of the metropolitan class shall, after the lapse of five years from the time of recording the treasurer's deed therefor, acquire and have a complete

title thereto, and thereafter all persons shall be debarred from commencing or sustaining any action in any court of this state to recover possession of the same.

"Sec. 93. Irregularities in making assessments and returns thereof, in the equalization of assessments, and in the mode and manner of advertising the sale of any property, shall not invalidate or affect the sale thereof, when advertised and sold for delinquent city taxes or special assessments as herein provided; nor shall the sale of any real estate for such taxes or assessments be invalid on account of such real estate having been listed in any other name than that of the rightful owner or owners."

In said section 91, for the first time, we find specific authority for the sale of real property for the purpose of paying local assessments or special taxes. Under the provisions of this section the city treasurer is required, on or before the first Monday in September of each year, to make out and deliver to the county treasurer a full and complete list of all lots, lands, or real estate against which, at that time, any taxes and assessments for the preceding year remain uncollected, together with the amount of such taxes or assessments chargeable against each lot or parcel of real estate set opposite the same. It is likewise the duty of the county treasurer to advertise and sell the lots and real estate, in such delinquent list described, for the purpose of paying all such delinquent taxes or assessments. It is, however, argued on behalf of the respondent that the word "assessments," as used in this section, is synonymous with "taxes," and therefore does not include or embrace special taxes or local assessments. We are unwilling to give the word "assessments" such a limited or restricted meaning. It is obvious that the legislature never so intended. If "assessments" and "taxes" in the connection they appear in this section mean the same thing, we ask why were they both employed united as they are by the copulative conjunction "and"? No reason therefor has been, or can be,

suggested.   If the words had been separated by the dis-
junctive conjunction "or," then there would have been
some ground upon which to base the construction for which
counsel contend.    That the word "assessments," in the
sense in which it is used here, is not synonymous with the
word "taxes" is manifest.   If otherwise, there was no
necessity for the legislature providing in said section for
the sale of real estate to pay delinquent city taxes alone,
since that had been already authorized in express terms by
section 109 of the revenue law.   Then, again, by section
92 of the charter, municipal taxes and special assessments
upon real estate are made a perpetual lien, and an action
against the purchaser of real estate sold for any such tax or
assessment is barred after the expiration of five years from
the recording of the treasurer's deed; and by section 93 it
is declared that irregularities in the making of assessments,
and the equalization thereof, and in the manner of the ad-
vertising the sale of any property should not invalidate the
sale, "when advertised and sold for delinquent city taxes
or special assessments as herein provided."   Construing
sections 91, 92, and 93 of the charter together, there is no
room to doubt that the word "assessments," as employed in
section 91, means special taxes or local assessments levied
for city improvements, and not the yearly taxes imposed by
the corporation for general purposes.

It is strenuously insisted by counsel for respondent that
the county treasurer has no authority to sell real estate for
special assessments, unless at the time there are delinquent
state, county, or general city taxes against the same prop-
erty.   This contention is based upon the clause of section
91, which reads: "The county treasurer shall receive such
delinquent list, and he shall advertise the real estate therein
described for sale for such delinquent taxes or assessments
at the same time he advertises the sale of real estate for de-
linquent taxes, by adding the amount of such delinquent
city taxes and assessments to the amount of delinquent

state, county, and other taxes, and he shall sell such lots, lands, or parcels of real estate for the purpose of paying all such delinquent taxes and assessments." From this provision it is argued that the county treasurer is empowered to advertise real estate for delinquent assessments only when he advertises the same property for sale for a general state or county tax, and that he is not permitted to advertise and sell for these local assessments until he can add them to an advertised list of general state and county taxes delinquent on the same property. The clause above quoted specifies that the treasurer shall advertise for delinquent assessments "at the same time he advertises the sale of real estate for delinquent taxes." By this is meant that he shall advertise at the time fixed by the general revenue law for the giving of notice of tax sales, and not merely when the identical lot against which such special assessment is delinquent is advertised for sale for general taxes. True, the treasurer is required to add the amount of the delinquent city taxes and assessments to the amount of any general taxes against the property, yet it does not necessarily follow that the treasurer cannot advertise and sell for special assessments until such time as there exists an unpaid delinquent state or county tax upon the property; nor do we think that the provisions of section 91, when read in connection with the other sections of the charter already mentioned, should receive the interpretation for which respondent contends. All that the legislature intended was that when both delinquent unpaid special assessments and general taxes should be found against the same property, the treasurer, in giving his notice of sale of lands for taxes, should add the amount of the former to the amount of the latter, and in such case he is required to sell " for the purpose of paying all such delinquent taxes and assessments." In other words, the property must be sold for all delinquent assessments, as well as delinquent taxes, against it. If there should be

found no unpaid state or county tax against the property, of course there would be nothing to which the special taxes could be added. This provision in regard to adding goes to the method or manner of advertising merely, and was inserted to obviate the necessity of giving separate notices, one for the sale for municipal taxes and assessments and another for state and county taxes. It was not intended as a limitation upon the power of the treasurer to sell for special taxes, for, following the clause referred to, the section provides that the treasurer " shall sell such lots, lands, or parcels of real estate for the purpose of paying all such delinquent taxes and assessments," and the section further on authorizes the treasurer in making the sale, giving the certificate of sale, and issuing the tax deed to proceed in the same manner as provided by law for the sale of real property for delinquent county taxes. He is clothed with the same power and authority in making sales for special assessments as possessed by him in making sales of real property for delinquent state and county taxes. Recurring again to section 92 we find that after providing that special assessments shall be a perpetual lien upon the real estate on which the same were imposed, it is declared that " any person or body corporate purchasing any real estate for any tax or assessment levied by the authorities of any city of the metropolitan class shall, after the lapse of five years from the time of recording of the treasurer's deed therefor, acquire and have a complete title thereto," etc. This language clearly contemplates that real estate may be sold for delinquent assessments or special taxes alone. It recognizes and assumes that the power exists to sell for such assessments alone. Further examination of section 93 of the charter will go to confirm the views already expressed. The substance of the provision is that certain enumerated irregularities shall not affect the sale of any property " when advertised and sold for delinquent city taxes or special assessments as herein provided; nor

shall the sale of any real estate for such taxes or assessments be invalid" by reason of the property having been listed in any name other than that of the owner. The words employed indicate that the legislature intended and contemplated that real estate might be advertised and sold for either city taxes or special assessments, although there should be no delinquent state or county taxes against the property. From a consideration of the several provisions of the charter, we are constrained to hold that the power of the county treasurer of Douglas county to sell lands for special assessments imposed by the city of Omaha is not limited or restricted to cases in which there shall be general municipal taxes, or state or county taxes, delinquent and unpaid against the same property upon which such special tax or assessment was levied. Such authority is not only specifically conferred, but it impliedly exists from the authority "to levy and collect special taxes and assessments" granted by section 69, when construed with reference to the clause making such assessments a perpetual lien upon real estate, the provision relating to the redemption of property from the sale for such special taxes, and other charter provisions heretofore alluded to. (See 2 Desty, Taxation, 748; *City of St. Louis v. Russell, supra.*)

In the precedent last cited the court had under consideration two provisions in the charter of the city of St. Louis. By one of which the city was given the power "to levy and collect taxes upon all persons and property made taxable by law for state purposes," and by the other it was provided that "the mayor and city council shall have power, by ordinance, to direct the manner in which any property, real or personal, advertised for sale, or sold for taxes by authority of the corporation, may be redeemed." It was held that these two provisions conferred upon the city the power to sell lands for the non-payment of taxes. The court in the opinion, in discussing the question, say: "The charter of 1841 gives to the city council of St.

Louis power ' to levy and collect taxes, not exceeding one-half of one per centum, upon all persons and property made taxable by law for state purposes.' If this section of the act were alone on this subject, there might be room for contending that the sale of land was not the only or necessary mode by which the tax could be collected, and therefore the power of sale would not arise by implication from the granted power 'to levy and collect.' But we regard the 8th section of the 6th article of the charter as a legislative interpretation of this power ' to levy and collect taxes.' That section provides that the mayor and city council shall have power, by ordinance, to direct the manner in which any property, real or personal, advertised for sale, or sold for taxes by authority of the corporation, may be redeemed. This is a clear and distinct recognition of the power in the city to sell land for the non-payment of taxes, and is sufficient to remove any doubts which the general phraseology of the previous article might create." The language of the foregoing opinion is unquestionably broad enough to cover the case at bar. In fact, stronger reasons exist for sustaining the power of sale here than in the Missouri case, since there are so many provisions in the statute under consideration bearing upon the power of sale which are not to be found in the St. Louis charter construed by the court.

The construction we have adopted is in harmony with the provisions of the general revenue law of the state, under section 109 of which law the county treasurer is required to offer for sale, at the time and place therein specified, "all lands on which the taxes levied for state, county, township, village, city, school district, or any other purpose for the previous year still remaining unpaid," etc. Power is thereby given to sell real estate for the taxes levied thereon for city or any other purpose, and the legislature has, by section 182 of the same law, defined the word "taxes," wherever used in the act, to

mean "any tax, special assessments, or costs, interest or penalty imposed upon property." The petition in the case before us discloses, and the defendant by his demurrer admits, that every requirement of the statute has been by the proper officers strictly followed in the matter of levying the special taxes or assessments upon the lot in controversy, and that such taxes are valid and remain unpaid, the sole ground upon which respondent places his refusal to sell the property to the relator being that the petition shows that there were no delinquent unpaid general taxes, state, county, or municipal, against said lot. From the conclusions stated above in this opinion, it follows that the demurrer should be overruled, and a peremptory writ of *mandamus* issued as prayed.

WRIT ALLOWED.