GEORGE O. W. FARNHAM, APPELLEE, V. CITY OF LINCOLN ET AL., APPELLANTS.

FILED JANUARY 18, 1906. No. 11,049.

1. **Cities: COMPROMISE OF SUITS.** The power conferred by statute upon cities of the first class to sue and be sued carries with it the power to compromise and settle such suits; and the city council may, when it acts in good faith, accept a less sum in settlement of a litigated case than is claimed to be due the city therein.

2. ———: ———. The provisions of section 4, article IX of the constitution, do not apply to special assessments to pay for local improvements levied upon the property benefited thereby; and municipal authorities have power to settle and compromise suits involving the validity of such special assessments, notwithstanding that section.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed and dismissed.*

*J. R. Webster, John P. Maule, E. C. Strode* and *Clark & Allen,* for appellants.

*Burr & Burr, contra.*

BARNES, J.

This action was commenced in the district court for Lancaster county by George O. W. Farnham, as a taxpayer of the city of Lincoln, to enjoin the mayor and city council from settling a pending suit between the Lincoln Street Railway Company and the city, which involved the validity of certain paving assessments levied against the property of the street railway company. The district court found for the plaintiff and awarded him a permanent injunction, and the defendants brought the case here by appeal.

An examination of the petition discloses that it contains no averment of facts constituting fraud, collusion, or unfair dealing on the part of any of the defendants, but after stating the situation of the parties, the levy of the

paving assessments, the pendency of the action to establish
the lien alleged to have been obtained thereby and to fore-
close the same, the decree of the district court therein,
amounting to upwards of $111,000, and the appeal by the
defendants to this court, it concludes with an averment
substantially as follows: "The defendants are about to
settle and compromise the said paving taxes and the decree
thereon for the sum of $65,000; and the said council has
passed a resolution authorizing such settlement, and the
defendant, the mayor of the city, is about to, and will, offi-
cially sign and approve of the resolution, unless prevented
from so doing by the order of the court; and the said de-
fendants will dismiss the action out of the supreme court,
and will commute and release and discharge the said pav-
ing taxes and tax lien, and have stipulated to settle and
dismiss the action and decree, and give away, donate and
discount to the said street railway company the sum of
$54,767, without payment thereof, notwithstanding the
premises and the fundamental law of the state, which for-
bids any sum of money for taxes due to any municipal cor-
poration being commuted in any form whatever; and the
said city council and said defendants have usurped the
functions of the courts of this state in the premises, and
the said scheme, if carried out, would be, and is, a fraud,
wrong and irreparable injury to the plaintiff and all tax-
payers of the city of Lincoln." So it may be said that the
plaintiff relied, for the relief prayed for in his petition,
solely on the alleged lack of power on the part of the mayor
and city council to compromise the suit, and accept a less
sum than was claimed by the city, and found due by the
district court, on account of the paving assessments in
question.

Section 9, article I, chapter 13, Compiled Statutes 1903
(Ann. St. 7708) provides, among other things, that the city
may sue and be sued, and the counsel shall have power to
make contracts, and to do the acts relative to the property
and concerns of the city, necessary and incident to the
exercise of its corporate powers. This would seem to au-

thorize the defendants to make the settlement complained of. But we are not without authority on this question. In *Fuller v. Martin*, 27 Neb. 441, which was an action to compel the mayor of the city of Friend to carry out a contract of settlement made by the city council with a waterworks company, by signing a warrant to pay the consideration named in such settlement, it was said:

"The power to compromise and settle claims of the nature and character of that involved in the case at bar, *held* to exist in the mayor and city council of cities in their legislative capacity growing out of their general corporate powers, and the necessities of such cases."

In the body of the opinion we find the following:

"While I am not aware that express authority is given to cities, or to the mayor and council, as legislators, to settle claims of this nature by compromise, yet the power of settlement and adjustment must be held to exist, and to grow out of their general corporate powers and the absolute necessities of the case."

The power to compromise grows out of, and is incident to, the power to sue and be sued. The power to sue and be sued is conferred on the city in express terms by its charter. This power would indeed be a snare, or its utility much impaired, if, having entered upon litigation, the city could not make an accord as to controverted matters, but must pursue the controversy to its ultimate result in the court.

In the case at bar, there was a controversy as to the validity of the assessments, and we may take judicial notice of the fact that the matter is still in litigation in an action now pending in this court. The case being pending and undetermined, the agreement to dismiss the appeal and terminate the litigation was a sufficient consideration for the settlement in question. 2 Freeman, Judgments (4th ed.), sec. 463, says: "If the debtor has the right to appeal, so that the judgment is not a finality, and its correctness is not conceded, an agreement between him and his creditor that the latter will accept a sum less than the

amount of the judgment if the former will not prosecute an appeal is valid and enforceable." It would seem clear from the foregoing that the power to sue and be sued carries with it the power on the part of the mayor and city council to compromise a suit, if such compromise is made in good faith; and, unless restrained by some statute or express constitutional provision, the city of Lincoln possessed the power to make the compromise in question.

The plaintiff contends, however, that by force of section 4, article IX of the constitution, such power is denied the city in cases like the one at bar. That section reads as follows: "The legislature shall have no power to release or discharge any county, city, township, town, or district whatever, or the inhabitants thereof, or any corporation, or the property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever." The city insists that the provisions of this section do not apply to cases like the one at bar, and cites *Collins v. Welch*, 58 Ia. 720. There, the supervisors, acting in good faith, compromised and adjusted a claim of the county for taxes which had already become enforceable by execution. The court said:

"There is no pretense that the claim for taxes was not properly put in judgment, and no question is raised in regard to the validity of the judgment. It has now become a claim to be enforced by execution, and in our opinion stands on the footing of any other judgment. The question, then, arises as to whether the board of supervisors has power to compromise a judgment. In our opinion it has. It is provided by section 303 of the code, subdivision 11, that county supervisors are 'to represent their respective counties, and to have the care and management of the property, and business of the county, in all cases where no other provision shall be made.' "

Counsel for the plaintiff vigorously assail the opinion quoted from, and contend that the rendition of the decree of foreclosure did not change the nature of the claim in

controversy. The city, while not conceding this point (a point which we do not decide), contends that the constitutional provision above quoted does not apply to special assessments. To determine this question section 4 should be read and construed with sections 3 and 6 of article IX of the constitution, in which it is found. Section 3 reads as follows: "The right of redemption from all sales of real estate, for the non-payment of taxes or special assessments of any character whatever, shall exist in favor of owners and persons interested in such real estate, for a period of not less than two years from such sales thereof." It will be observed that the section just quoted provides for the right of redemption from sales for the non-payment of taxes *or local assessments* of any character whatever. It seems reasonable that, if it was intended to include such assessments in section 4, the same language would have been used. The omission of the term *assessments* in that section is significant. Again, section 6 provides: "The legislature may vest the corporate authorities of cities, towns and villages, with power to make local improvements by special assessment, or by special taxation of property, benefited. For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same." This section seems to make a clear distinction between special assessments and taxes levied and collected for general revenue purposes.

Again, the authorities lay down a clear line of distinction between taxes, in the ordinary sense of the word, and special assessments. Judge Cooley, in his work on Taxation (1st ed.), ch. 20, p. 416, says:

"Special assessments are a peculiar species of taxation, standing apart from the general burdens imposed for state and municipal purposes, and governed by principles that do not apply generally. The general levy of taxes is understood to exact contributions in return for the general benefits of government, and it promises nothing

to the persons taxed, beyond what may be anticipated from an administration of the laws for individual protection and the general public good.   Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it."

The courts of other states, having constitutional provisions similar to our own, have recognized this distinction.   In *Hill v. Higdon,* 5 Ohio St. 243, the court said:

"It is our duty to give such a construction to the constitution as will make it consistent with itself, and will harmonize and give effect to all its provisions.   To do this, we have only to suppose, that the convention used language with reference to its popular and received signification; and applied it as it had been practically applied for a long series of years.   That where taxation is spoken of in the second section of the twelfth article reference is made to the general burdens imposed for the purpose of supporting the government, and the revenue raised expended for the equal benefit of the public at large; while the power of *assessment,* referred to in the sixth section of the thirteenth article, although resting upon the taxing power, was intended to describe a distinct and well known mode of laying a local burden upon particular property, with reference to the *peculiar* and *special* benefit derived to such property from the expenditure of the money."

Distinguishing the words "taxes" and "assessments," the South Dakota supreme court in *Winona & St. P. R. Co. v. City of Watertown,* 1 S. Dak. 46, 44 N. W. 1,072, said: "Notwithstanding the fact that both are derived from the same power, yet the terms 'tax' and 'taxation' and the terms 'special assessments' have a well understood meaning by courts and the public generally.   Taxes and taxation are understood to mean the taxes imposed by the govern-

ment   *   *   *   to provide funds for general expenses of
the particular community or district for which the taxes
are levied. Special assessments are understood to refer
to money raised or levied for some local municipal pur-
pose to which the funds so collected are to be specifically
applied.   *   *   *   Assessments are presumed to be made
on account of special benefits to the property assessed."

Lastly, this court, in *City of Beatrice v. Brethren
Church,* 41 Neb. 358, has followed the weight of authority
on this question. It was there said:

"The consensus of these authorities is that an assessment
to reimburse a municipal corporation for such benefit as
it has conferred upon an adjacent lot by reason of pave-
ments or sidewalks laid alongside it is not an exercise of
power to tax in the generally accepted meaning of that
term."

It is apparent on the face of the constitution that the
framers of that instrument did not use the word taxes and
the term special assessments as equivalents of each other,
or that either included the other. Section 1, article IX,
provides that taxes shall be levied by valuation and pro-
portionate value, except special taxes on the kinds of busi-
ness therein enumerated. Section 6 of the same article
provides that the ordinary revenues of municipalities shall
be uniform in respect to persons and property, and con-
tains a special provision that the legislature may authorize
corporate authorities of towns and villages to make local
improvements by special assessments. Construing these
provisions in the case last above cited, we said:

"The exemptions provided by section 2, article IX of the
constitution, are solely with reference to taxes assessed by
valuation for general purposes, and have no applicability
to special assessments, or special taxation of property bene-
fited by local improvements under authority of section 6
of the same article."

This distinction was again recognized in *Scott v. Society
of Russian Israelites,* 59 Neb. 571. So we are of opinion
that the section of the constitution first above quoted does

not apply to the special assessments in question in this case, and that the city council had the power to make the settlement complained of.

Therefore the judgment of the district court is reversed and the action is dismissed.

JUDGMENT ACCORDINGLY.

LETTON, J., not sitting.