HENRY H. FALLDORF, APPELLEE, V. CITY OF GRAND ISLAND ET AL., APPELLANTS.

292 N. W. 598

FILED JUNE 7, 1940. No. 31007.

*Paul C. Holmberg* and *Cleary, Suhr & Davis,* for appellants.

*Harry Grimminger, contra.*

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

Plaintiff, owner of real estate in Grand Island, brought this action to enjoin the city of Grand Island and its treasurer from accepting payment of special improvement assessments, less accrued interest and penalties thereon, due the city, claiming that the city council had no power or authority to remit interest and penalties upon special assessments under the city charter or the statutes of Nebraska; that the statutes of Nebraska and the city charter fix a definite rate of interest within limits, and the remission of such interest and penalties constitutes an arbitrary action and an attempt to vary the state law and provisions of the city charter by ordinance. The court found generally in favor of the plaintiff and against the defendants; that ordinance No. 1709, authorizing the remission of interest and penalties on special assessments, is contrary to and in direct conflict with the provisions of the charter of defendant city, and that the city has no power to pass or make effective ordinances contrary to or in conflict with the provisions of said charter, and permanently enjoined the defendants and each of them from waiving interest or interest penalties on special assessments. From this judgment defendants appeal.

The issues were presented to the district court on a case stated, which may be briefly summarized as follows: The city of Grand Island is a city of the first class; John R. Geddes is its treasurer. June 3, 1928, the city adopted a home rule charter. In 1937 the supervisors of Hall county authorized and directed the commencement of foreclosure proceedings involving all general real estate taxes in arrears prior to the year 1932. Such proceedings are now pending, and there is now due upon such properties, with interest and penalties, special improvement assessments in the proximate amount of $193,792.67. The part of the ordinance involved in this case is, in substance, as follows:

Section 1 provides: "Any penalty interest on instalments of special assessments in connection with which the city of Grand Island, Nebraska, has issued bonds or registered

warrants or has assumed obligations therefor and which became delinquent prior to March 19, 1937, shall be remitted and canceled, and the same need not be paid but only in the event that the original amount of such unpaid delinquent instalments, exclusive of penalty interest shall be paid on or before the 30th day of June, 1940, together with interest thereon at the rate originally assessed by ordinance or ordinances. * * * The term penalty interest as used in this ordinance shall be construed to mean that interest charged and provided for in the ordinances levying such special assessments * * *.

"Proceedings for the collection of such delinquent special assessments, whether instituted prior to or after the date of this ordinance becomes effective shall not be affected in any manner, except that the taxpayer may during the interim herein specified, pay the original amount of such delinquent special assessment with interest as aforesaid and such sum shall be accepted in full redemption of such delinquent assessment."

The ordinance then provides the authority for the acceptance, by the city treasurer or the county treasurer, of the payments as designated in the ordinance, and that no liability shall attach to such treasurers on their bond.

The provisions of the city charter with reference to special assessments and interest are in substance as follows: Section 5 of article 7 provides for the assessed cost of paving districts; provides that the total cost of the improvement shall be levied at one time upon the property and become delinquent, as therein provided, one-tenth of the total cost in 50 days after such levy; one-tenth in one year and one-tenth each year thereafter for nine years, and fixes the rate of interest at 7 per cent. from the time of the levy until such payments may become delinquent, and thereafter at 10 per cent. The charter provides for the extension of water mains from time to time and the creation of new water-main extension districts and the manner of assessments for expenses against the lots and lands in the water districts; likewise for sewer districts, sewer assessments and sewer

district bonds; also for sidewalks, the right to build and repair, and that the assessment constitutes a lien on such lots or lands when sidewalks are built and repaired by the city.

Provisions of the statute involved, with reference to special assessments and interest, are in substance as follows: Section 16-614, Comp. St. 1929, as amended (Laws 1933, ch. 136, sec. 18), provides for the cost of improvements, assessed according to special benefits, assessments payable in instalments and at the rate of interest which is substantially the same as the city charter with reference to the same subject-matter, providing for paving assessments, payable over a period of nine years, with interest at 7 per cent. and 10 per cent. upon deliquency. Section 16-649, Comp. St. 1929, as amended (Laws 1933, ch. 136, sec. 19), provides for water and sewer districts, draining, construction of sewers and costs, and assessments payable in four years, with interest not to exceed 7 per cent. and upon delinquency 1 per cent. per month. Sewer district assessments are identical with water-main assessments. Section 16-646, Comp. St. 1929, provides for permanent sidewalks, petition, costs and ordinance ordering improvement, and that such assessments shall be paid in seven years, with interest not exceeding 7 per cent. and 10 per cent. upon delinquency.

Section 1, art. 19 of the city charter provides: "Chapter 44 of the Compiled Statutes of the state of Nebraska for the year 1922 (Comp. St. 1929, ch. 16), and all amendments thereto passed by the legislature of the state of Nebraska prior to August 2nd, 1927, in so far as the same are not inconsistent with, repugnant to or in conflict with the provisions hereof or any amendments hereinafter adopted by the voters of the city of Grand Island, are made a part of this" charter. The provisions of chapter 44, Comp. St. 1922 (now Comp. St. 1929, ch. 16), are pertinent to cities of the first class and refer to governmental powers, officers, election, powers and duties, city council and proceedings, contracts and franchise, public works, improvements, fiscal manage-

ment, debts and bonds. Other relevant statutory and charter provisions involved are section 16-201, Comp. St. Supp. 1939, which reads in part as follows: "Each city governed by the provisions of this chapter shall be a body corporate and politic, and shall have powers: First. To sue and be sued." The home rule charter (art. 2, sec. 1) provides: "To sue and be sued," etc. The fourth provision of section 16-201, *supra*, reads: "To make all contracts and do all other acts in relation to the property and concerns of the city necessary to the exercise of its corporate powers; Fifth. To exercise such other and further powers as may be conferred by law." Section 8 of article 2 of the city charter provides: "To make contracts and do all other acts relating to the property and concerns of the city necessary or incident to the exercise of its corporate powers." The city charter further provides (art. 2, sec. 4): "To purchase real estate upon sale for general or special taxes or assessments and to lease, sell or convey such property so purchased." Section 7, art. 2 of the charter, provides: "To make all such ordinances, by-laws, rules and regulations in addition to the special powers in this charter granted and enumerated— maintain the peace, good government and welfare of the city, its trade, commerce and manufacturers," etc.

The foregoing provisions of the ordinance, the statutes and the city charter constitute the basis for the contentions of the respective parties, presenting the following issue: Does the city council of Grand Island have the power and authority by general ordinance to waive, cancel and remit the interest and penalty interest on special improvement assessments, prior to June 3, 1928, the date of the adoption of the city charter, and subsequent to the adoption of said charter.

Defendants contend that the provisions of the statute and of the city charter, as hereinbefore set out, warrant the remission of interest and penalties on special assessments by the city, and cite *Farnham v. City of Lincoln,* 75 Neb. 502, 106 N. W. 666, on the right of the city to compromise special assessments.

In the cited case, the plaintiff, a taxpayer of Lincoln, brought an action to enjoin the mayor and city council from settling a pending suit between the Lincoln Street Railway Company and the city of Lincoln, which involved the validity of certain paving assessments. The district court found for the plaintiff and awarded a permanent injunction. The decree of the court contained an amount upwards of $111,-000, comprising paving assessments. The city council passed a resolution to compromise the assessments for $65,000. The court held: "The power conferred by statute upon cities of the first class to sue and be sued carries with it the power to compromise and settle such suits; and the city council may, when it acts in good faith, accept a less sum in settlement of a litigated case than is claimed to be due the city therein." See, also, *State v. Martin,* 27 Neb. 441, 43 N. W. 244.

In the instant case, there is no controversy concerning the amount of the principal or the amount of the interest due on the delinquent assessments, and the owners of the property are not attacking the validity of the liens. In fact, in *Farnham v. City of Lincoln, supra,* there was a compromise and settlement of a pending suit before judgment, involving the validity of special assessments to pay for local improvements, as distinguished from the instant case.

In the body of the opinion in the *Farnham* case, the court quoted from Cooley, Taxation (1st ed.) ch. 20, p. 416, as follows (p. 506): "Special assessments are a peculiar species of taxation, standing apart from the general burdens imposed for state and municipal purposes, and governed by principles that do not apply generally. * * * Special assessments * * * are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it." The foregoing language is in keeping with the defendants' contention that

special assessments are not taxes within the meaning of the Nebraska law and therefore are analogous to claims which the city may compromise or adjudicate.

In further support of defendants' contention, the case of *Tukey v. Douglas County*, 133 Neb. 732, 277 N. W. 57, is cited, which held:

"Penalties for nonpayment of taxes are creatures of statute and the legislative authority creating them may waive or remit them. * * *

"The remission of penalties on unsold delinquent taxes is likewise a method that may be employed to induce payment of such taxes. * * *

"Penalties for nonpayment of taxes are punitive in their nature and their remission by the legislature is an act of grace."

To reach a proper analysis of the case at bar, it is necessary to ascertain just what power or authority a city of the first class possesses, where such power or authority is obtained, in the first instance, and in what manner such authority or power may be exercised.

"A municipal corporation possesses only such powers as are expressly conferred upon it by statute, or are necessary to carry into effect some enumerated power." *State v. Irey*, 42 Neb. 186, 60 N. W. 601; reaffirmed in *State v. Temple*, 99 Neb. 505, 156 N. W. 1063.

In *Interstate Power Co. v. City of Ainsworth*, 125 Neb. 419, 250 N. W. 649, this court held:

"A municipal corporation is a creature of the law established for special purposes and its corporate acts must be authorized by its charter or other laws applicable thereto. 1 McQuillin, Municipal Corporations (2d ed.) sec. 367.

"The powers which a municipal corporation may exercise are: '(1) Those granted in express terms; (2) those necessarily or fairly implied in, or incident to, the powers expressly granted; and (3) those essential to the declared objects and purposes of the municipality, not merely convenient, but indispensable.' 1 McQuillin, Municipal Corporations (2d ed.) sec. 367."

In *Consumers Coal Co. v. City of Lincoln*, 109 Neb. 51, 189 N. W. 643, the court, in speaking of the power conferred upon the electorate of a city to frame a charter for its own government, in substance held: The city may do so as fully and completely as an electorate of the state may form a state Constitution, providing the charter is consistent with and subject to the Constitution and the laws of the state. The home rule charter of the city of Lincoln was declared to constitute a grant, as distinguished from a limited power, and for such reason the charter was to be construed according to the same rules as a legislative act, containing the same provisions, as determining the power which is thereby granted the city government. Having concluded that the city charter constituted a grant, rather than a limitation of power, the court stated (p. 69) that the principles of construction applicable thereto are the same as to a grant by the legislature; that is: "A municipal corporation, therefore, possesses no powers or faculties not conferred upon it, either expressly or by fair implication, by the law which created it, or by other laws, constitutional or statutory, applicable to it. *It is a creature of the law established for special purposes and its corporate acts must be authorized by its charter, or other laws applicable thereto.*" (Italics ours.)

The city charters of the cities of Lincoln and Grand Island are similar in many respects, and, in both instances, the power is granted to the cities by the legislature. The language above cited from the case of *Consumers Coal Co. v. City of Lincoln, supra,* is applicable to the case at bar.

The city of Grand Island has received a delegation of power to tax special assessments from the statutory provisions enacted by the legislature, as reflected by the language contained in the following authorities:

In *Trephagen v. City of South Omaha,* 69 Neb. 577, 96 N. W. 248, this court said (p. 585): "It is one of the elementary principles of taxation that the power to tax lies exclusively in the legislature. Without a special legislative enactment, no city, or other municipal subdivision, has any

right to levy a tax or assessment upon the property of its citizens. Cooley, Taxation (2d ed.) 62, 142."

In 44 C. J. 485, it is said: "Since municipal corporations have no inherent power to levy special assessments, such authority must have its origin either in provisions of the organic law, or in some statute conferring it, either expressly or by necessary and unmistakable implication; and the implication must be so clear as necessarily to reveal a purpose to grant the power."

In *Consumers Coal Co. v. City of Lincoln, supra,* this court said (p. 76): "The power conferred upon municipal corporations by their charters to enact ordinances on speci-fied subjects is to be construed strictly, and the exercise of the power must be confined within the general principles of the law applicable to such subjects."

We conclude that the statutes of Nebraska fix the interest and penalties to be charged on delinquent special assessments for improvement of districts that were established prior to the adoption of the home rule charter, and that the provisions of the home rule charter likewise fix the interest and penalties to be charged on delinquent special assessments. To hold otherwise would be to read into the language of the home rule charter an alternative not within the intent of the electors adopting the charter, or within the spirit of the law.

Some reference is made to an existing emergency in that, if the city is not permitted to remit interest and penalties on special assessments, then the city would be obligated to buy in the separate properties for the general taxes thereon, to protect itself, which would mean an expenditure of thousands of dollars, which would obligate the city to finance, by bond issue or other procedure, to obtain money with which to buy in such properties, but that, in the event the city was authorized or empowered to remit the interest and penalties on special assessments, then such properties would be redeemed or purchased, with the result that some $35,000 would accrue to the benefit of the city.

Granting all of such statements to be true, we are con-

vinced that the emergency here existing is not of such proportions as would warrant the city in performing the acts or expending the funds beyond the powers specifically granted by the provisions of the state law and the city charter.

The city council, having once fixed the amount of interest and delinquent interest on special assessments, is not empowered thereafter, under the present provisions of the city charter, to reduce or increase such interest without a grant of special power.

AFFIRMED.